**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis (to be admitted *pro hac vice*)
954 Avenida Ponce De Leon
Suite 205 #10518
San Juan, Puerto Rico 00907
Telephone: (215) 559-6072
Email: *klaukaitis@laukaitislaw.com*

*Counsel for Plaintiff and the Proposed Classes*

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**KRISTI STACHOWICZ,** individually and on behalf of all others similarly situated,

Plaintiff,

v.

**UNILEVER UNITED STATES, INC.** and **CONOPCO, INC. d/b/a KENSINGTON & SONS** and as successor by merger to **KENSINGTON & SONS, LLC**;

Defendants.

Case No. 26-cv-5910

**<u>CLASS ACTION COMPLAINT</u>**

**JURY TRIAL DEMANDED**

Plaintiff Kristi Stachowicz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Defendant, Unilever United States, Inc. and Conopco, Inc. d/b/a Kensington & Sons and as successor by merger to Kensington & Sons, LLC (collectively "Defendant") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## NATURE OF THE ACTION

1. This class action challenges Defendant's false and misleading marketing of its **Sir Kensington's Avocado Oil Mayonnaise** (the "Product") as being made with **"100% Avocado Oil,"** when laboratory testing revealed that the Product's oil composition is inconsistent with authentic, unadulterated avocado oil. The Product is sold at grocery and department stores nationwide, as well as online through the official Sir Kensington's website and various third-party retailers.

2. The Product at issue is Sir Kensington's Avocado Oil Mayonnaise. An image of the Product's label is reproduced below.




3. Plaintiff and class members who purchased the Product bring this Action to challenge Defendant's materially false and misleading representations concerning the oil used in the Product. Defendant markets and advertises the Product as "Avocado Oil Mayonnaise" and as being made with "100% Avocado Oil" (collectively, the "Representations"). Read together, these Representations convey to reasonable consumers that avocado oil is the sole oil used in the Product—not that the mayonnaise consists entirely of avocado oil, but that its oil component consists exclusively of avocado oil. Plaintiff alleges that the Representations mischaracterize the Product's actual oil composition. The identity and composition of the oil are material to consumers seeking mayonnaise made exclusively with avocado oil.

4. Plaintiff alleges that Defendant made the Representations to induce consumers, including Plaintiff, who sought mayonnaise made exclusively with avocado oil to purchase the Product. Plaintiff challenges the Representations as false and misleading because they allegedly mischaracterize the identity and composition of the oil used in the Product.

5. By marketing the Product as "Avocado Oil Mayonnaise" and as being made with "100% Avocado Oil," Defendant appeals to consumers who specifically seek mayonnaise in which avocado oil is the sole oil ingredient. Plaintiff alleges that these Representations create an expectation concerning the Product's composition and enable Defendant to charge a price premium. Plaintiff and class members paid that premium in the belief that the Product conformed to the Representations. Had they known that the Product allegedly did not conform to those Representations, they would not have purchased it or paid less for it.

6. Accordingly, Plaintiff, individually and on behalf of the proposed Class and Subclass defined below, brings this Action under applicable state statutes and common-law doctrines to recover for the economic injury allegedly caused by Defendant's misleading labeling, marketing, and advertising of the Product. Plaintiff seeks actual damages, statutory damages where authorized, restitution, pre and post judgment interest, reasonable attorneys' fees and costs where recoverable, and such other relief as the court deems appropriate.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

8. This Court has personal jurisdiction over the Defendant because the claims asserted in this complaint arise from Defendant's contacts with this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents,

subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in New York, and/or marketed, advertised, distributed and/or sold the Product, committed a statutory violation within New York related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of New York, during the relevant period. At that time, Defendant was engaged in business activities in New York.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District through the promotion, sale, and marketing of the Product in this District. Venue is also proper because Plaintiff resides in this District.

## PARTIES

### *Plaintiff Kristi Stachowicz*

10. Plaintiff, Kristi Stachowicz, is an individual consumer who, at all times material hereto, is and was a resident and citizen of Sound Beach, New York.

11. During the applicable limitations period, Plaintiff purchased Sir Kensington's Avocado Oil Mayonnaise at a Target store located in Selden, New York. The Product was prominently labeled "Avocado Oil Mayonnaise" and represented as being made with "100% Avocado Oil."

12. Before purchasing the Product, Plaintiff reviewed and relied upon the Representations, understanding them to mean that avocado oil was the sole oil used in the Product. Plaintiff paid a price premium based on those Representations and would not have purchased the

Product, or would have paid less for it, had Plaintiff known that its oil composition allegedly did not conform to the Representations.

***Defendant***

13. Defendant Unilever United States, Inc. ("Unilever") is a Delaware corporation with its principal place of business at 111 River Street, Hoboken, New Jersey 07030. Unilever acquired the Sir Kensington's brand in 2017. Unilever, directly and through its subsidiaries, formulates, manufactures, packages, labels, markets, advertises, distributes, and sells the Product throughout New York and the United States, including in this District. The official Sir Kensington's website states that it "is directed only to U.S. consumers for products and services of Unilever United States."[1]

14. Defendant Conopco, Inc. ("Conopco") is a New York corporation with its principal place of business at 111 River Street, 8th Floor, Hoboken, New Jersey 07030. Conopco does business as, and is the entity identified on the Product's label as, "Kensington & Sons" and is the distributor of the Product. The Product's label states: "Distributed by Kensington & Sons, Englewood Cliffs, NJ 07632." Kensington & Sons, LLC was a Delaware limited liability company (Delaware File No. 5070005), formed on November 22, 2011, that marketed and distributed Sir Kensington's® products and that Unilever acquired in 2017. On November 24, 2025, Kensington & Sons, LLC merged into Conopco, with Conopco as the surviving entity. By operation of law, Conopco succeeded to all of the rights, obligations, and liabilities of Kensington & Sons, LLC, including liability for the conduct alleged herein, and Conopco has continued to distribute the Product under the "Kensington & Sons" name identified on the label. Conopco is sued individually

[1] Sir Kensington's, https://www.sirkensingtons.com/us/en/ (last visited Sept. 18, 2026).

as the entity doing business as Kensington & Sons and as successor by merger with Kensington & Sons, LLC.

15. Each Defendant participated in, controlled, authorized, ratified, directed, or knowingly benefited from the creation and dissemination of the Avocado Oil Representations, and each is therefore responsible for the conduct alleged herein. Plaintiff reserves the right to amend this Complaint to add any other Unilever affiliate that discovery reveals formulated, manufactured, labeled, distributed, or sold the Product.

## COMMON FACTUAL ALLEGATIONS

### Consumers Seek Out and Pay More for Products Made with Avocado Oil

16. Consumers seek products made with avocado oil for reasons that include perceived health benefits, flavor, and ingredient preferences. Researchers at the University of California, Davis ("UC Davis") have reported that consumers are willing to pay more for avocado oil and products made with it.[2] Accordingly, representations identifying avocado oil as the exclusive oil ingredient can influence consumers' purchasing decisions.

17. Research has identified authenticity concerns in processed foods marketed as containing avocado oil. In July 2026, UC Davis reported that researchers tested 54 avocado oil-labeled products purchased in 2025 and 2026 and found that 48 contained other oils. Approximately 71% of the mayonnaise products tested failed the researchers' purity assessment.[3] These findings concern the samples examined and do not establish that every avocado oil-labeled product is adulterated.

---

[2] https://caes.ucdavis.edu/news/study-finds-82-percent-avocado-oil-rancid-or-mixed-other-oils (Last accessed on September 16, 2026)

[3] https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil (Last Accessed on September 16, 2026)

18. The researchers assessed authenticity by analyzing fatty acids and sterols, which provide chemical indicators of an oil's composition. They also examined whether food processing affected those indicators and reported that the changes were minimal. This research illustrates the importance of evaluating the actual oil composition of a product when assessing the accuracy of avocado oil representations.[4]

19. Defendant markets the Product as "Avocado Oil Mayonnaise" and represents that it is made with "100% Avocado Oil." Plaintiff alleges that these Representations appeal to consumers seeking mayonnaise whose oil component consists exclusively of avocado oil and support a price premium attributable to that characteristic. Plaintiff further alleges that the Product does not conform to the Representations and that Plaintiff and Class members consequently paid more for the Product than they otherwise would have paid.

**Defendant's False and Misleading Representations**

20. Defendant markets, distributes, and sells Sir Kensington's Avocado Oil Mayonnaise throughout the United States, including New York, through grocery stores and third-party retailers, including Walmart, Sprouts Farmers Market, and Giant Food, as well as their online retail platforms. Defendant also promotes the Product through its official Sir Kensington's website.

21. Below are illustrative samples of the Product and Representations:

[4] *Id.*




22. The official product page identifies the Product as "Avocado Oil Mayonnaise" and expressly describes it as containing "100% Avocado Oil."[5] These statements emphasize the identity and purity of the oil used as the Product's fat base.




The ingredient list displayed on the official website identifies avocado oil as the first ingredient. It also lists egg yolks, water, distilled vinegar, salt, lime juice concentrate, citric acid, and lime oil.

---

[5] https://www.sirkensingtons.com/us/en/p/avocado-oil-mayonnaise.html/00850551005951

It does not identify soybean, canola, sunflower, or another vegetable oil as a substitute for or component of the avocado oil base[6].




23. Read together, the Product's name, the "100% Avocado Oil" statement, and the ingredient declaration convey to reasonable consumers that the Product's oil base consists of avocado oil rather than avocado oil blended with other vegetable oils. This understanding does not require consumers to believe that the entire mayonnaise consists of avocado oil; the Product expressly includes other ingredients.

24. The "100% Avocado Oil" Representation is a specific, objectively verifiable statement concerning ingredient composition. Plaintiff challenges the accuracy of that statement and alleges that the Product's actual oil composition does not conform to the Representation.

---

6 https://www.sirkensingtons.com/us/en/p/avocado-oil-mayonnaise.html/00850551005951 (Last accessed on September 16, 2026)

**The Product’s Oil Composition Must Be Accurately Represented.**

25. Defendant’s “100% Avocado Oil” Representation concerns the identity and composition of the oil used in the Product. Read together with the name “Avocado Oil Mayonnaise,” the Representation conveys that the Product’s vegetable-oil base consists exclusively of avocado oil, rather than avocado oil blended with other vegetable oils.

26. Federal regulations establish a standard of identity for mayonnaise. Under 21 C.F.R. § 169.140(a), mayonnaise is an emulsified semisolid food prepared from vegetable oils, specified acidifying ingredients, and egg-yolk-containing ingredients, and must contain at least 65 percent vegetable oil by weight. The regulation permits different vegetable oils; it does not require mayonnaise generally to be made with avocado oil.

27. Defendant nevertheless makes the additional, specific Representation that its Product is made with “100% avocado oil.” Plaintiff’s challenge concerns the accuracy of that Representation, rather than the mere use of vegetable oil in mayonnaise.

28. The Federal Food, Drug, and Cosmetic Act provides that a food is misbranded if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a)(1). This prohibition applies to representations about a food’s ingredients and composition.

29. In determining whether labeling is misleading, federal law requires consideration of both the representations made and the omission of material facts in light of those representations.

30. FDA regulations generally require ingredients to be identified by their common or usual names and listed in descending order of predominance by weight, subject to specified exceptions. 21 C.F.R. § 101.4(a)(1).

31. More specifically, 21 C.F.R. § 101.4(b)(14) generally requires each individual fat or oil ingredient to be declared by its specific common or usual name. Although the regulation

permits certain collective descriptions for blends, such descriptions must be accompanied by identification of the individual fats or oils as prescribed by the regulation.

32. The ingredient declaration displayed on the official Sir Kensington's website identifies avocado oil as the first ingredient and does not identify another vegetable oil as part of the Product's oil base. The declaration separately lists lime oil among the other ingredients. Plaintiff's challenge concerns the authenticity of the avocado oil base, not the presence of the separately disclosed lime oil.

33. The "100% Avocado Oil" Representation and ingredient declaration reinforce the same message concerning the Product's vegetable-oil base. If that base contains substituted or blended vegetable oils that are not disclosed, identifying it solely as avocado oil would misdescribe its composition.

34. Plaintiff alleges that Defendant's Representations mischaracterize the Product's actual oil composition and are material to consumers seeking mayonnaise made with an avocado oil base. Plaintiff further alleges that the resulting misrepresentation caused Plaintiff and Class members to purchase the Product at a price they otherwise would not have paid.

35. Plaintiff does not assert a standalone claim to enforce the Federal Food, Drug, and Cosmetic Act. Plaintiff seeks relief under the state-law causes of action pleaded herein for Defendant's allegedly deceptive representations and the resulting economic injury. The federal labeling provisions provide context for the ingredient-disclosure and labeling standards relevant to those claims.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

36. Defendant prominently markets the Product as "Avocado Oil Mayonnaise" and represents that it is made with "100% Avocado Oil." Plaintiff alleges that reasonable consumers,

viewing these Representations together and in context, would understand that the Product's vegetable-oil base consists exclusively of avocado oil.

37. The Product's ingredient list reinforces that understanding by identifying "Avocado Oil" as the first ingredient and identifying no other vegetable oil used as the mayonnaise's oil base. The separately listed lime oil does not disclose that the vegetable-oil base contains any substitute for avocado oil.

38. Reasonable consumers lack the ability to determine the botanical origin or purity of the Product's vegetable-oil base through ordinary inspection or consumption. They would not ordinarily conduct laboratory testing or investigate Defendant's ingredient sourcing to verify the "100% Avocado Oil" Representation.

39. Plaintiff alleges that the Representations are material because they concern the identity and composition of a principal ingredient in the Product. Consumers seeking mayonnaise with an exclusively avocado-oil vegetable-oil base would consider that information significant when deciding whether to purchase the Product and what price to pay.

**Defendant Knew the Representations Were False.**

40. Upon information and belief, Defendant knew or should have known that the Representations were false or misleading when it marketed, advertised, labeled, distributed, and sold the Product. Through its involvement in the Product's formulation, ingredient sourcing, specifications, or quality-control processes, Defendant had access to information concerning the identity and composition of the Product's vegetable-oil base that was unavailable to consumers.

41. Defendant controlled or participated in developing and approving the Representations appearing on the Product's labeling and advertising. Defendant knew or should have known that reasonable consumers would understand "Avocado Oil Mayonnaise" and "100%

Avocado Oil," considered together and in context, to mean that the Product's vegetable-oil base consisted exclusively of avocado oil.

42. Defendant had the ability to verify the accuracy of the Representations and to correct its labeling or ensure that the Product conformed to those Representations. Nevertheless, Plaintiff alleges that Defendant continued using the challenged Representations despite the discrepancy between the represented and actual oil composition alleged herein.

43. Defendant knew or should have known that the Representations would influence consumers' purchasing decisions. Plaintiff alleges that its continued use induced Plaintiff and Class members to purchase the Product or pay more for it than they otherwise would have paid had its actual oil composition been disclosed.

**Defendant's Avocado Oil Representations Injured Plaintiff and the Class.**

44. Plaintiff alleges that Defendant misrepresented or failed to disclose material facts concerning the identity and composition of the Product's vegetable-oil base. Specifically, Defendant represented that the Product was "Avocado Oil Mayonnaise" made with "100% Avocado Oil," although, as alleged herein, its vegetable-oil base did not consist exclusively of avocado oil.

45. Plaintiff reviewed and relied upon the Representations when purchasing the Product. Those Representations were material to Plaintiff's decision because Plaintiff sought mayonnaise whose vegetable-oil base consisted exclusively of avocado oil. Had Defendant accurately disclosed the Product's oil composition, Plaintiff would not have purchased the Product or would have paid less for it.

46. As a direct and proximate result of the challenged Representations, Plaintiff and Class members paid for a Product that differed materially from what Defendant represented. They

were deprived of the benefit of their bargain and paid more than the Product was worth given its actual composition.

47. Accordingly, Plaintiff and Class Members (as defined below) suffered an economic injury measured by the difference between the price they paid and the value of the Product they received. Plaintiff alleges that this loss resulted from Defendant's misleading Representations concerning the Product's oil composition.

## CLASS ALLEGATIONS

48. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

49. Plaintiff, individually and on behalf of all others, brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following classes:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product for personal consumption or use.
>
> **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by law, purchased Defendant's Product for personal consumption or use (hereinafter the "NY Subclass" and together with the Nationwide Class the "Class Members," "Members of the Class" or "Classes").

50. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

51. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

52. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

53. **Numerosity**: A class action is the only available method for the fair and efficient adjudication of this controversy, as the Members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

54. **Commonality:** Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether the Representations communicated that the Product's vegetable-oil base consisted exclusively of avocado oil;

b. Whether the Product's actual oil composition conformed to the Representations during the class period;

c. Whether the Representations were likely to mislead reasonable consumers;

d. Whether the identity and composition of the Product's vegetable-oil base were material to purchasing decisions;

e. Whether Defendant's conduct violated the New York consumer-protection laws asserted herein;

f. Whether the Representations caused purchasers to pay a price premium; and

g. Whether that premium can be measured using a methodology applicable across the Class and consistent with Plaintiff's theory of injury.

55. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

56. **Adequacy of Representation:** Plaintiff in this class action is an adequate representative of the Class in that Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

57. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

58. **Superiority of Class Action:** Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

59. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

60. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's

imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

61. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

62. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

63. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (On behalf of Plaintiff and the NY Subclass [7])

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the NY Subclass against Defendant.

66. This claim is brought pursuant to New York General Business Law § 349, which prohibits deceptive acts or practices in the conduct of business, trade, or commerce within New York.

67. Defendant committed deceptive acts and practices by making false or misleading representations concerning the identity and composition of the vegetable-oil base in Sir

[7] Plaintiff reserves the right to amend this list of states after discovery.

Kensington's Avocado Oil Mayonnaise. Specifically, Defendant marketed the Product as "Avocado Oil Mayonnaise" and represented that it was made with "100% Avocado Oil," although, as alleged herein, its vegetable-oil base did not consist exclusively of avocado oil.

68. Defendant's challenged conduct was directed at consumers through labeling and advertising used to promote the Product to the general public, including purchasers in New York.

69. The Representations were materially misleading because reasonable consumers would understand them, considered together and in context, to mean that the Product's vegetable-oil base consisted exclusively of avocado oil. Defendant's labeling and advertising did not disclose the contrary composition alleged herein.

70. The identity and composition of the Product's vegetable-oil base were material to consumers seeking mayonnaise made with avocado oil. Defendant's prominent use of the "100% Avocado Oil" Representation emphasized that characteristic as a reason to purchase the Product.

71. Plaintiff reviewed the Representations before purchasing the Product and purchased it in the belief that its vegetable-oil base consisted exclusively of avocado oil. Had the Product's actual oil composition been disclosed, Plaintiff would not have purchased it or would have paid less.

72. As a direct and proximate result of Defendant's deceptive conduct, Plaintiff and NY Subclass members suffered actual economic injury by paying a premium attributable to the Representations and receiving a Product worth less than the price they paid.

73. Pursuant to New York General Business Law § 349(h), Plaintiff seeks, individually and on behalf of the NY Subclass, actual damages or fifty dollars, whichever is greater, as permitted by law; discretionary enhanced damages for knowing or willful violations, subject to the statutory limits; and reasonable attorneys' fees.

**COUNT II**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(On behalf of Plaintiff and the NY Subclass)**

74. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the NY Subclass against Defendant.

76. New York General Business Law § 350 prohibits false advertising in the conduct of business, trade, or commerce within New York.

77. Under New York General Business Law § 350-A(1), false advertising includes labeling that is misleading in a material respect. Whether advertising is misleading depends on both its affirmative representations and its failure to disclose facts material in light of those representations under customary conditions of use. Specifically, it provides the following:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual. []

78. Defendant's labeling and advertising represented that Sir Kensington's Avocado Oil Mayonnaise was made with "100% Avocado Oil." Considered together and in context, the Representations communicated to reasonable consumers that the Product's vegetable-oil base consisted exclusively of avocado oil.

79. Plaintiff alleges that the Representations were false and materially misleading because the Product's vegetable-oil base did not consist exclusively of avocado oil, as described in the factual allegations above. Defendant's labeling and advertising failed to disclose that discrepancy.

80. Defendant directed the challenged labeling and advertising to consumers, including purchasers in New York. The Representations concerned a principal ingredient and were material to consumers deciding whether to purchase the Product and what price to pay.

81. Plaintiff reviewed and relied upon the Representations when purchasing the Product. Had Defendant accurately disclosed the Product's oil composition; Plaintiff would not have purchased the Product or would have paid less.

82. The Product purchased by NY Subclass members bore the challenged "100% Avocado Oil" Representation. Plaintiff alleges that this common advertising message induced purchases and generated a price premium.

83. As a direct and proximate result of Defendant's false advertising, Plaintiff and NY Subclass members suffered actual economic injury by paying more for the Product than it was worth given its actual oil composition.

84. Upon information and belief, based on Defendant's involvement in the Product's labeling and access to composition information as alleged herein, Defendant knowingly or willfully disseminated the materially misleading Representations.

85. Pursuant to New York General Business Law § 350-e(3), Plaintiff and NY Subclass members seek actual damages or statutory damages of five hundred dollars, whichever is greater, as permitted by law; discretionary enhanced damages for knowing or willful violations, subject to

the statutory limits; and reasonable attorneys' fees. Plaintiff also seeks costs and interest to the extent authorized by law

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Plaintiff, the Nationwide Class, or alternatively the NY Subclass)**

86. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

87. Plaintiff brings this claim on behalf of herself, the Nationwide Class, or alternatively the NY Subclass against Defendant.

88. This claim is brought pursuant to the laws of the State of New York.

89. Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Product while misrepresenting and omitting material facts.

90. Defendant's unlawful conduct as described in this Complaint allowed Defendant's to knowingly realize substantial revenues from selling their Product at the expense of, and to the detriment or impoverishment of, Plaintiff and the Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

91. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant's for its "100% Avocado Oil" mayonnaise.

92. It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

93. Plaintiff, the Nationwide Class, or alternatively the NY Subclass, seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and Subclass and naming Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b) For an order declaring Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff, the Class and the Subclass their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: September 23, 2026

Respectfully Submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205 #10518
San Juan, PR 00907
Phone: (215) 559-6072
Email: *klaukaitis@laukaitislaw.com*

*Counsel for Plaintiff*
*and the Proposed Classes*